PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone:  (816) 984-8100
Facsimile:   (816) 984-8101
E-mail: Rick@PaulLLP.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| MIKE ANDERSON, individually and on behalf of similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> MOUNTAIN VIEW PIZZA CO., BLACK HILLS PIZZA, INC., and CHOOSE THE RIGHT PIZZA, LLC, <br><br> Defendants. | Case No. 1:18-cv-00058-SPW-TJC |

## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF A COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Plaintiff Mike Anderson, on behalf of himself and all others similarly situated, through his attorneys, moves the Court for (1) certification of a Fair Labor Standards Act ("FLSA") collective action and (2) approval of the parties' collective action settlement. Defendants do not oppose this Motion.

A copy of the parties' executed Settlement Agreement is attached as "Exhibit 1." The proposed Notice of Collective Action Settlement ("Notice") is attached as

"Exhibit 2" and The declarations of Plaintiffs' attorneys Mark Potashnick and Richard M. Paul III in support of this motion and brief are attached as "Exhibit 3" and "Exhibit 4," respectively. Plaintiffs incorporate the following Memorandum in Support. The parties have reached a settlement on behalf the 109 Opt-In Plaintiffs. The settlement meets the standards for approval of an FLSA settlement.

## Facts and Procedural History

Defendants together operate 16 Papa John's Pizza franchise stores in Montana, Colorado, Idaho, and South Dakota.

Named Plaintiff Mike Anderson worked for Defendants as a delivery driver from about January 2015 to October 23, 2018.

On March 26, 2018, Plaintiff Anderson filed suit against Defendants on behalf of himself and similarly situated delivery drivers currently and formerly employed by Defendants. He alleged that Defendants under-reimbursed their delivery drivers' vehicle costs incurred on the job, thereby reducing their net wages below the federal and state minimum wage rates (nominal wages – unreimbursed vehicle costs = subminimum net wages). Further, Plaintiff Anderson alleged that Defendants applied the same reimbursement formula and reimbursement rate to all of their delivery drivers during the recovery period.

The parties jointly moved to approve a stipulated notice of collective action on February 12, 2019 and to stay the above-captioned case pending mediation. Doc. 55.

In that motion, the parties stipulated to conditionally certifying the case as a collective action under the FLSA and authorizing notice to be sent to all current and former delivery drivers employed by Defendants within three years preceding the Court's Order approving notice plus periods of tolling ("Class Period"). The Court approved the parties' joint motion on February 13, 2019. Doc. 56. ("Order".)

The Order stayed the case until August 1, 2019 to permit the parties to disseminate notice, disclose data, and mediate. *Id.* at 4. The Order further provided that the Defendants would disclose information and data pursuant to the parties' joint motion to enable distribution of the parties' agreed-upon notice within 30 days of the Order and to value the claims. *Id.*

After notice was disseminated, 114 total Opt-Ins submitted consents to join. Five Opt-Ins (Docs. 24, 108, 111, and 112) subsequently withdrew their consents to join, leaving a total of 109 Opt-Ins participating in this Settlement.

Prior to mediation, Defendants disclosed the opt-in Plaintiffs' detailed pay, delivery, mileage and reimbursement records which permitted Plaintiffs' Counsel to evaluate the merits and calculate damages.

The parties mediated for a full day on August 26, 2019 in Houston, Texas with an experienced wage and hour and class action mediator, Dennis Clifford, Esq. After a full day of mediation, and subsequent negotiations over the following months, the parties reached an accord resulting in the settlement agreement filed herewith.

Named Plaintiff Anderson actively participated in each round of the mediation. The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests.  Ex. 3, Declaration of Mark Potashnick, at ¶¶ 1-8 (hereinafter "Potashnick Decl."); Ex. 4, Declaration of Richard M. Paul III (hereinafter "Paul Decl."), at ¶¶ 4-6.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving several vigorously-disputed legal and factual issues.  It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals, as well as the risk that Defendants would be unable to pay a large judgment.  Potashnick Decl. ¶ 10; Paul Decl., ¶ 8.

## Key Settlement Terms

The parties have executed a Settlement Agreement and Release of Claims (Ex. 1). Defendants have agreed to settle all Opt-In plaintiffs' wage and hour claims by paying $215,000.00 inclusive of attorneys' fees, costs and a service award, to be paid over three years.  All class members will receive at least $25.00.  The remaining settlement funds will be distributed to Opt-In Plaintiffs on a pro-rata basis according to an equitable formula determined by Plaintiffs' Counsel, based primarily on the total number of miles driven by each Opt-in Plaintiff and the reimbursements they received from Defendants. *See* Ex. 1, Settlement Agreement, ¶ 4.a.

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, Named Plaintiff Anderson seeks a service award of $2,500.00. *See id.,* ¶ 5.a.

Subject to this Court's approval, Plaintiffs' Counsel will receive fees and litigation costs of one-third (1/3) of the total settlement, at a substantial reduction of its lodestar. Defendants do not oppose or object to this request for attorneys' fees and costs. *See id.*, ¶ 5.b. Plaintiffs' Counsel has incorporated its Application for Fees and Costs with this Motion. *See* § III.

## Argument

### I. The FLSA Collective Action Settlement Should Be Approved

Unlike a Rule 23 settlement, FLSA settlements may be approved in a one-step process, and no final fairness hearing is required. *See, e.g., Heuberger v. Smith,* 2019 U.S. Dist. LEXIS 118174, *7 (N.D. Ind. Jan. 4, 2019) (citing cases); *Carr v. Bob Evans Farms,* 2018 U.S. Dist. LEXIS 228221, *4 (N.D. Ohio Jul. 27, 2018); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, *4 n.1 (D. Ariz. Jun. 9, 2017).

To effect a binding release, the Ninth Circuit requires judicial or U.S. Department of Labor approval of FLSA settlements. *Seminiano v. Xyris Enter., Inc.*, 602 Fed. Appx. 682, 683 (9th Cir. 2015) (citing with approval *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982)). An FLSA settlement should be approved if the settlement is a "fair and reasonable resolution of a *bona fide* dispute."

*Grewe*, 2016 U.S. Dist. LEXIS 98224, at *2 (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id.* (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 U.S. Dist. LEXIS 179635, *6 (N.D. Cal. Dec. 19, 2012) (quoting *Lynn's Food*, 679 F.2d at 1354)).

The Court should readily conclude that the parties' settlement here constitutes a fair and reasonable resolution of a *bona fide* dispute. "[W]here the Court evaluates an FLSA collective action settlement, the standard is less exacting than when evaluating a Rule 23 class action settlement. This is because Rule 23 settlements bind all class members except those who affirmatively opt out, thus presenting the risk that a settlement will unknowingly bind individuals. In contrast, an FLSA settlement binds only those who affirmatively opt in." *Grewe,* 2016 U.S. Dist. LEXIS 98224, *9 (internal citations omitted).

As set forth above, in evaluating the parties' proposed compromise, the Court need not reach its own conclusions as to the expected value of litigating the claims through trial and appeal. *Officers for Justice*, 688 F.2d at 625; *Grewe*, 2016 U.S. Dist. LEXIS 98224, at *8-9.

### 1.  There Was A *Bona Fide* Dispute

A settlement addresses a *bona fide* dispute when it "reflect[s] a reasonable compromise over issues ... that are actually in dispute." *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (quoting *Lynn's*, 679 F.2d at 1355). Here, Plaintiff Anderson alleged that under-reimbursed automobile expenses caused minimum wage violations. Defendants deny Plaintiffs' substantive allegations, assert that Plaintiffs were reasonably reimbursed for vehicle costs, and contend that Plaintiffs were compensated at or above the applicable minimum wage.

Defendants produced, and the parties analyzed, detailed data specific to Plaintiffs' allegations of liability and damages. If a jury agreed with Plaintiffs' allegations about a reasonable reimbursement rate, Defendants could have faced a sizable monetary judgment, which could include liquidated damages, as well as the obligation to pay Plaintiff's attorneys' fees and costs. On the other hand, if a jury agreed with Defendants about a reasonable reimbursement rate, Plaintiffs would obtain no recovery whatsoever. These facts clearly demonstrate the existence of a *bona fide* dispute.

Finally, the settlement was the product of arm's-length negotiations by experienced counsel, facilitated by a highly experienced and skilled mediator, Dennis Clifford.

### 2. The Settlement Is Fair and Reasonable

The settlement provides meaningful monetary relief to the Plaintiffs and eliminates the inherent risks each side would bear if this complex litigation continued to resolution by a jury—an issue that, to the parties' knowledge, no jury has previously decided.

Courts typically rely on the adversarial nature of a litigated FLSA case resulting in settlement as an *indicia* of fairness. *See Lynn's*, 679 F.2d at 1354. Here, the settlement creates a settlement fund that will be paid to the Named Plaintiff and all other opt-in Plaintiffs. Distributions from the settlement fund will be allocated to the Plaintiffs based on an equitable formula considering the total number of deliveries each of them performed, miles driven, and the amounts previously reimbursed by Defendants. Ex. 1, ¶ 4.a. The amount of the settlement fund falls well between the maximum amount Plaintiffs might have recovered if they prevailed on every claim, and zero, the amount they would have recovered if Defendants prevailed instead. Thus, the settlement represents a fair and reasonable compromise.

To determine whether settlement terms are fair and equitable to all parties, courts consider factors including: (1) the settlement negotiations between the parties, (2) the settlement amount to be paid to the plaintiffs, (3) the individual settlement amounts to each person, (4) the litigation risks, and (5) the scope of the release. *See Ambrosino v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 111109, *4-5 (S.D.

Cal. Aug. 11, 2014). Put in slightly different terms, "[th]e Court considers factors such as the risk, expense, complexity, and likely duration of litigation; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; and the reaction of putative members to the proposed settlement." *Grewe,* 2016 U.S. Dist. LEXIS 98224, *3. These factors show this settlement to be fair and reasonable.

As stated above, "where the Court evaluates an FLSA collective action settlement, the standard is less exacting than when evaluating a Rule 23 class action settlement. This is because Rule 23 settlements bind all class members except those who affirmatively opt out, thus presenting the risk that a settlement will unknowingly bind individuals. In contrast, an FLSA settlement binds only those who affirmatively opt in." *Grewe,* 2016 U.S. Dist. LEXIS 98224, *9 (internal citations omitted).

### Factor 1: The Settlement Is the Result of Arm's Length Negotiations.

Prior to mediation, Defendants produced pay, delivery, mileage and vehicle reimbursement data for the Opt-In Plaintiffs. This allowed for a detailed analysis of the merits of Plaintiffs' claims and quantification of potential damages. Ex. 3, Declaration of Mark Potashnick, ¶ 9. The parties were only able achieve a settlement after a full day of mediation and subsequent negotiations. *Id.*, ¶11. Moreover, both sides were represented by counsel experienced in wage and hour litigation generally,

and in litigating similar cases specifically. Plaintiffs' Counsel has represented employees in FLSA claims, including scores of similar delivery driver reimbursement cases around the nation. Potashnick Decl., ¶¶ 4-7.

Indeed, it may be fairly said that Plaintiffs' Counsel pioneered pizza delivery driver FLSA cases. Likewise, Defendants' attorneys have defended numerous FLSA actions, including many pizza delivery driver cases. Thus, the settlement is clearly the product of informed arm's-length negotiations. *See Rodriguez*, 563 F.3d at 965 (the court should "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (an arm's-length settlement after hours of negotiations with a third-party neutral is "highly indicative of fairness").

### Factors 2 and 3:   Plaintiffs' Recoveries Are Fair and Reasonable.

The Settlement Agreement requires individual checks to all of the Plaintiffs in specified amounts. These recoveries will provide the Plaintiffs with the equivalent of an increased reimbursement rate for each delivery, in exchange for a release of "wage and hour claims accrued through the date of this Agreement that were or could have been made against the Released Parties in this Litigation, or similar wage-based claims based on the same facts alleged in the Complaint." Ex. 1, ¶ 1.o.[1]

---

[1] Thus, the parties negotiated a limited, not general, release. *See infra*, Factor 5.

The settlement was reached by negotiating a reimbursement rate between the IRS rate, which was Plaintiffs' position, and the rate paid by Defendants, with neither side conceding that such a compromise rate is reasonable or proper. While many delivery drivers will receive much more, every Plaintiff will receive at least $25.00. Equitably, Plaintiffs who made more deliveries (and therefore incurred more unreimbursed expenses) will receive proportionately larger amounts than those Plaintiffs who made less deliveries. *See Ambrosino*, 2014 U.S. Dist. LEXIS 111109, *5 (use of individual wage and hour data supports reasonableness of settlement). This is meaningful relief to low-wage-earning workers.

### Factor 4:    The Litigation Risks Are Significant.

While the amounts to be paid to Opt-Ins are less than the amounts under Plaintiffs' "best-day" damages calculations, this must be considered in light of the both the risks inherent in litigation and the risk that Defendants would be unable to pay a large judgment. Indeed, the risks that existed for both sides if litigation continued were significant. *See Nat'l. Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results"). If the litigation were to continue, Plaintiffs would likely face a motion to decertify the collective action and a dispositive motion. And, if Plaintiffs survived those challenges, they would still face a jury trial. Further, the ultimate

question may be what constitutes a "reasonable reimbursement." That would be the subject of competing expert testimony. The jury's determination of that question would decide liability and damages. The amount of damages, if any, could vary greatly depending on the reasonable reimbursement rate determined by the jury. Further, whether a jury would find any violation willful to extend the limitations period to the third year is also unknown. Thus, success on the merits is far from assured, and this factor strongly supports approval of the settlement.

Further underlining the reasonableness of the settlement is the fact that throughout settlement negotiations (including confidential disclosures during mediation) Defendants have repeatedly stressed they may be unable to pay a large judgment. Defendants financial position underscores the benefit to Plaintiffs of avoiding the real collection risk Plaintiffs could face if they continued to litigate through trial and secured a judgment.

### Factor 5: Scope of the Release Is Commensurate with the Claims Asserted.

The release provided by the delivery drivers is appropriately limited to wage and hour claims that were or could have been brought in the litigation based on the same facts alleged in the Complaint. Ex. 1, ¶ 1.o. Defendants have not overreached with respect to the terms of the settlement. *See Ambrosino*, 2014 U.S. Dist. LEXIS 111109, *5-6 (a proper release tracks the breadth of the allegations).

Although the complaint alleges a putative (Rule 23) Montana class under the Montana Minimum Wage and Overtime Compensation Act ("MMWOCA"), but Plaintiffs are not seeking certification or settlement of a Rule 23 class. Thus, *only* the Named and Opt-In Plaintiffs will release their MMWOCA claims. *See Grewe*, 2016 U.S. Dist. Lexis 98224 at *9.

Based on each of these factors, the Court should approve the settlement because the record demonstrates the settlement is a fair and reasonable compromise of a *bona fide* dispute.

## III. The Court Should Approve Attorney's Fees and Costs as Provided in the Settlement

The Settlement Agreement provides that Plaintiffs' Counsel will recover their fees from the Settlement Amount. Ex. 1, ¶ 5.b. The FLSA requires fee- and cost-shifting. 29 U.S.C. § 216(b). As various courts have observed, the theory behind attorneys' fee awards in representative actions is that "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Natl. Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (cited with approval in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In other words, fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every

employee receives "a fair day's pay for a fair day's work"). The Supreme Court has "recognized consistently that ... a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that where an employee prevails in an action, an award of attorneys' fees is mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975); *Yue Zhou v. Wang's Restaurant*, 2007 U.S. Dist. LEXIS 60683, *4-5 (N.D. Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory."). The Court has discretion to approve reasonable fees as a percentage of a settlement fund. *Boeing Co.,* 444 U.S. at 478-79.

The settlement agreement here authorizes an award of fees *and costs* equal to of one-third (1/3) of the total settlement amount, or $71,666.67. This represents a significant reduction of Plaintiffs counsel's lodestar in the case of $111,872.50. By the time Plaintiffs' counsel sees the case through the settlement approval and the settlement administration phase, counsel will almost certainly receive less than 50% of its lodestar. Other courts in this Circuit have approved the same fee percentage in cases entailing the exact same claims. *See, e.g.*, *Kirkwood v. Noble Food Grp., Inc.,*

2019 U.S. Dist. LEXIS 10146, *1-4 (W.D. Wa. Jan. 22, 2019); *Armes v. Hot Pizzas, LLC,* 2017 U.S. Dist. LEXIS 89920, *12-15 (D. Ariz. Jun. 9, 2017); *Larson v. Desert Sun Pizza, LLC,* Case No. 3:16-cv-08011-SRB (D. Ariz. Jan. 5, 2017) (Ex. 5).[2]

Here, the Named Plaintiff agreed to pay 35% *exclusive of (and in addition to) costs* of any collective action settlement as a fee. However, Plaintiffs' Counsel voluntarily agreed to reduce that fee to one-third as part of the settlement, again *including litigation costs*.

To ensure a fee award is reasonable, this Circuit applies "the *Kerr* factors," to cross-check the ultimate reasonableness of an attorneys' fee award: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;[3] (7) time limitations imposed by the client or

---

[2] The Ninth Circuit has recognized a loose benchmark of 25% in *Rule 23* class actions involving *passive* plaintiffs, but courts have recognized that most percentage fee awards exceed the benchmark. *See, e.g.*, *Syed v. M-1, LLC*, 2017 U.S. Dist. LEXIS 118064, *15-18 (E.D. Cal. July 27, 2017) (awarding fees of 1/3 of FLSA and Rule 23 settlement fund); *Bell v. Consumer Cellular, Inc.,* 2017 U.S. Dist. LEXIS 95401, *33 (D. Or. Jun. 21, 2017) (recognizing that "Courts have commonly approved awards of approximately 33% in [wage and hour] cases." (citing cases)); *Hopkins v. Stryker Sales Corp.,* 2013 U.S. Dist. LEXIS 16939, *8-10 (N.D. Cal. Feb. 6, 2013) (awarding 1/3 fee and citing 6 cases awarding at least 1/3 fee); *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 492 (E.D. Cal. 2010) (33.3% fee awarded); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 111497, *17-18 (N.D. Cal. Feb. 2, 2009) (30% fee awarded). Indeed, in "most common fund cases, the award exceeds that benchmark." *Vasquez*, 266 F.R.D. at 491 (internal quotation marks omitted). Further, as discussed above, Plaintiffs are not seeking to settle the claims of "passive" absent Rule 23 class members and are resolving only the claims of the collective Opt-In Plaintiffs.

[3] This factor is no longer applied. *In re Bluetooth,* 654 F.3d at 942 n.7.

the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *In re Bluetooth*, 654 F.3d at 942 n.7 (9th Cir. 2011) (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975)). All "*Kerr* factors" support approval of the requested fee.

### *Kerr* Factors (2), (3), & (9): Novelty and Difficulty of the Questions Presented; Skill, Experience, Reputation, and Ability of the Attorneys

Minimum wage lawsuits based on under-reimbursed expenses were extremely rare before Plaintiffs' Counsel's efforts on behalf of pizza delivery drivers. Previous cases prosecuted by Plaintiffs' Counsel provided significant and novel challenges, and ultimately yielded favorable decisions on pleading, certification, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim" and "[t]he present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases.)).

Under the defendants' threats of seeking sanctions in both the *NPC case* and *Smith v. Pizza Hut, Inc.*, Case No. 09-CV-01632 WDM-BNB (D. Colo.) if their

theory proved incorrect, Plaintiffs' Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *See id*. These rulings paved the way for conditional certification of the FLSA claims here, and ultimately this settlement.

As the U.S. District Court for the District of Maryland recognized:

> In some of these cases, [Claimants' Counsel] have represented pizza delivery drivers situated precisely as Claimants have been in the present case. In addition, the quality of the pleadings, motions, and briefs in the case fully evidences Class Counsels' skill, competence, and knowledge of the applicable law.
>
> …the fees are reasonable based on Class Counsels' skill. [Claimants' Counsel] are experienced and innovative wage and hour lawyers, which appears to be a niche practice. They have developed an expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.

*Hackett v. ADF Rest. Invs.*, 259 F. Supp. 3d 360, 368 (D. Md. Dec. 19, 2016); *see also, e.g., Jimenez v. Pizzerias*, LLC, 2017 U.S. Dist. LEXIS 129820, *13-14 (S.D. Fla. Aug. 14) ("…Plaintiffs' Counsel in this matter are experienced and innovative wage and hour lawyers who have developed expertise in challenging the sufficiency of compensation for pizza delivery drivers under the FLSA.").

The fact that rulings from other courts – obtained by Plaintiffs' Counsel - may have helped them obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-37 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a similar argument,

while these prior decisions bolstered Plaintiffs' position, no court of appeals has addressed these issues. Similarly, none of the other pizza delivery driver cases have been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Trial may be expert-intensive and thus costly. Plaintiffs would need to provide documentary evidence, lay testimony, and expensive expert testimony sufficient to establish liability and damages for all Plaintiffs. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

Additionally, Plaintiffs' Counsel possess extensive experience in all types of wage and hour litigation. Potashnick Decl., ¶¶ 3-7; Paul Decl., ¶¶ 5, 8. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of Plaintiffs' attorneys, and "undesirability" of the case, *Kerr* factors (2), (3), (9) and (10) all strongly support Plaintiffs' Counsels' requested fee.

### *Kerr* Factors (5) & (8): Amount Involved and Results Obtained; and Customary Fee.

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *accord In re Bluetooth*, 654 F.3d at 942. As noted above, given the novelty and difficulty of cases involving minimum wage laws vis-à-vis reimbursable expenses, the delivery drivers' recovery at trial could have ranged anywhere from a sizable recovery to very little to nothing at all. Thus, the amount agreed to by the parties following contentious mediation and

subsequent negotiations is a very successful result for Plaintiffs. The total settlement amount is the result of good faith, but contentious arm's-length negotiation and represents an excellent result for the opt-ins in this case. Some opt-ins will receive substantial payments for their alleged unreimbursed vehicle expense. And while some opt-ins will receive less than others – based on relatively fewer miles driven within the applicable recovery period – no opt-in will receive less than $25.00.

Moreover, although the percentage fee requested here is routine in common fund, contingent fee cases, it is less than Plaintiffs' Counsel's customary contingent fee in wage and hour litigation, which ranges between 35% and 40% of any recovery. Here, the Named Plaintiff signed a contingency fee agreement with Plaintiffs' Counsel agreeing to fees up to 35% of the total recovery. However, Plaintiffs' Counsel have cut their percentage to one-third (at a substantial discount to their lodestar) to help resolve this case and increase the amount paid to Plaintiffs.

### *Kerr* Factors (1), (4), & (10):    Time and Labor Expended; Preclusion of Other Work; and Undesirability of the Case.

Plaintiffs' Counsel's firms combined spent nearly 350 hours litigating this case with no assurance of any recovery at all. Potashnick, ¶ 14; Paul Decl., ¶ 11. This includes time spent investigating the facts; preparing and filing the original pleading; reviewing documents and data produced by the Named Plaintiff and by Defendants; analyzing Defendants' payroll, delivery, mileage, and reimbursement data; communicating with the Named Plaintiff and Opt-in Plaintiffs; creating

computerized damages models; researching and drafting a mediation statement; participating in the mediation; drafting discovery requests; reviewing Defendants' discovery responses and document production; addressing discovery issues, researching and drafting amended pleadings (which Plaintiffs intended to file at the time of settlement); preparing for multiple corporate representative depositions in multiple locations; negotiating the terms of the settlement; drafting approval papers; and seeking Court approval of the settlement. Potashnick Decl., ¶ 14; Paul Decl., ¶ 10-11.

Plaintiffs' Counsel's lodestar is based on their standard hourly billing rates for work of this type.  Potashnick Decl., ¶¶ 14-15; Paul Decl., ¶ 11; *see, e.g., Benton v. Deli Mgt., Inc.,* Case No. 1:17-cv-00296-TCB (ECF Doc. # 139 (Ex. 6), at 17-18 (order approving settlement, including all fees sought)) & (ECF Doc. # 138 (Ex. 7), at 5, 12 & 13 (seeking fees for Richard Paul at rate of $600.00 per hour, for Mark Potashnick at rate of $500.00 per hour, and for Sean Cooper at rate of $300.00 per hour); *Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF Doc. # 35) (Ex. 8) (awarding $500.00 per hour for Mark Potashnick); *Heuberger,* 2019 U.S. Dist. LEXIS 118174, at *13-14 (approving $450.00 per hour for Mark Potashnick); *Hoffman v. Poulsen Pizza, LLC,* 2017 U.S. Dist. LEXIS 459, *21-22 (D. Kan. Jan. 3, 2017) (approving $600.00 per hour for Richard Paul III and

$450.00 per hour for Mark Potashnick); *Hackett,* 259 F.Supp.3d at 367-69 n.2 (approving $475.00 per hour for Mark Potashnick).

These rates, and much higher, have been approved as reasonable in numerous wage-and-hour cases, and courts in this Circuit frequently approve substantially higher hourly rates. *See, e.g.*, *Pittsley v. City of El Cajon,* 2019 U.S. Dist. LEXIS 141335, *19-20 (S.D. Cal. Aug. 19, 2019) (finding $650.00 per hour to be reasonable rate for wage and hour litigator with over 25 years' experience); *Thomas v. Kellogg Co.*, Case No. 3:13-cv-05136-RBL (W.D. Wash.) (Dkt. 537, p. 25; noting rates as high as $800.00/hour in wage-and-hour collective action); *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017) (approving hourly rates ranging from $300.00 to $900.00); *Velazquez v. Int'l Marine and Indus. Applicators, LLC*, 2018 U.S. Dist. LEXIS 21884, *25 (S.D. Cal. Feb. 9, 2018) (approving fee award; lodestar cross-check at hourly rate up to $800.00); *Bickley v. CenturyLink, Inc.*, 2016 WL 9046911, *5 (C.D. Cal. Nov. 29, 2016) (approving hourly rates of $650.00 to $750.00 in misclassification / overtime case).

Significantly, in this case, the lodestar cross-check yields a *fractional* multiplier of .56 based on counsel's time spent through October 28, 2019 (($71,666.67 total fee and cost recovery - $8,170.93 costs recovered) = $63,495.74 fee recovery / $111,872.50 lodestar value of time = .56). In other words, Plaintiffs' Counsel have agreed to accept significantly *less* than their standard fees, in a case they took on a

contingency basis with the all the risk inherent in such an agreement. Of course, this fractional multiplier will decline even further as counsel spends additional time pursuing settlement approval, assisting in settlement distribution, and responding to numerous inquiries from Plaintiffs.  Such a reduction underscores the reasonableness of counsel's fee request, particularly considering "the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002). Accordingly, courts routinely enhance lodestar amounts based on multipliers ranging from 2 to 4, or even higher. *See id.* (approving multiplier of 3.65).  *Id.*

Such a fee-reduction also underscores the "undesirability" of this case. The work on this case naturally precluded counsel from pursuing other litigation opportunities, opportunities that could very well have yielded ordinary fees or fee-multipliers. In addition, Plaintiffs' Counsel will be required to expend significant additional time administering the settlement, which requires distributing individual recoveries and communicating with individual Plaintiffs.

### A. *Kerr* Factor (12): Awards in Similar Cases.

Plaintiffs' Counsel's fees equal to one-third (1/3) of the total recovery have been approved within this Circuit in the same claims against other pizza delivery companies.  *Kirkwood,* 2019 U.S. Dist. LEXIS 10146, at *1-4; *Armes,* 2017 U.S.

Dist. LEXIS 89920, at *12-15; *Larson* (Ex. 5); *see also, e.g.*, *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, at 1123-27 (C.D. Cal. 2008) ("a 33% fee award is both reasonable, and in line with the general market for contingent fee work"); *Barbosa*, 297 F.R.D. 431, at 451 (33% of the class recovery is reasonable and approved based on the risk of litigation, fee awards in other wage-and-hour cases). Further, because the common fund is a relatively small fund, a 33% recovery is fair and commonplace for contingent fee work. *See Van Vranken v. A. Richfield Co.*, 901 F.Supp. 294, 297 (N.D. Cal. 1995) (funds under the $10 million mark are considered smaller, justifying a higher percentage attorney's fee). As such, Plaintiffs' Counsels' fee recovery in this case is more than reasonable.

Notably, the percentage method is the preferred method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the clients and most fairly correlates counsel's compensation to the benefit conferred on the clients.

Compensating counsel in common fund cases on a percentage basis makes good sense. First, it is customary for contingent fee attorneys to be compensated on a percentage-of-the-recovery method. Second, it rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances. Third, use of the percentage method decreases

the burden imposed on the court by the "lodestar" method and assures that plaintiffs do not experience undue delay in receiving their share of the settlement.

The diligent work by Plaintiffs' Counsel in obtaining relief for the Opt-Ins should be appropriately compensated. Given the risks they incurred in litigating this case on a contingent fee basis, the requested attorneys' fees are reasonable and appropriate in this case.

## IV. Plaintiff Anderson Deserves a Service Award

The Settlement Agreement provides for a reasonable service award of $2,500.00 to the Named Plaintiff. Ex. 1, ¶ 1.q. Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards are appropriate in FLSA collective actions for same reasons as in Rule 23 class actions); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (service awards "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits").

Factors bearing on the decision of whether to grant a service award include, as relevant here, the actions taken by the named plaintiff to protect the interests of all other delivery drivers, the degree to which the delivery drivers have benefited from

those actions, and the amount of time and effort the named plaintiff expended on the litigation. *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, Named Plaintiff Anderson substantially assisted counsel in achieving this settlement on behalf of all of Defendants' delivery drivers who have been employed during the recovery period.  He first sought and obtained counsel with specific experience in minimum wage/vehicle reimbursement claims and initiated this action. He provided ongoing guidance to counsel. He endeavored to protect the interests of all of the opt-ins and to obtain a substantial recovery on their behalf. He participated throughout the day-long mediation and subsequent settlement efforts, and vigorously negotiated on behalf of all of Defendants' delivery drivers.  Potashnick Decl., ¶ 13.  The other delivery drivers have substantially benefitted from Mr. Anderson's efforts. Because of these efforts, a modest service award is justified.

The award also falls well within the range of other service awards typically approved by courts in this Circuit.  *See, e.g.*, *Staton*, 327 F.3d at 977 (noting the Ninth Circuit's previous approval of service awards of $5,000.00 to named plaintiffs and collecting other cases); *Thio*, 14 F. Supp. 3d at 1335 (approving $5,000.00 service awards to named plaintiffs); *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, at 1181 (S.D. Cal. 2016) (same); *Harris v. Vector Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797, *20-21 (N.D. Cal. Feb. 6, 2012) (noting that a $5,000.00

service award is "presumptively reasonable" and supported by ample case law and granting the named plaintiff a $12,500.00 award). Defendants do not oppose the service award.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and issue an Order that:

a.  certifies an FLSA collective action for purposes of settlement;

b.  finds that the parties' settlement of the FLSA claim appears to be fair, reasonable, and adequate as to members of the collective action class;

c.  grants approval of the FLSA collective action settlement;

d.  approves as to form and content the Plaintiffs' proposed notice attached as Ex. 2 ;

e.  awards such further relief as the Court deems equitable and just; and

f.  dismisses the Plaintiffs' claims with prejudice, each side to bear its own fees and costs except as previously agreed between the parties.

Dated:    March 20, 2020

By: */s/ Sean Cooper*
Richard M. Paul III (MO Bar No. 44233)
Sean Cooper (MO Bar No. 65847)
**PAUL LLP**
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Telephone:  (816) 984-8100
Rick@PaulLLP.com
Sean@PaulLLP.com
**Counsel for Plaintiffs**

Mark A. Potashnick (MO Bar No. 41315)
**WEINHAUS & POTASHNICK**
11500 Olive Boulevard, Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile:  (314) 997-9170
markp@wp-attorneys.com
**Counsel for Plaintiffs**

Respectfully submitted,

William D'Alton (MT Bar No. 4246)
**D'ALTON LAW FIRM, P.C.**
1643 24th St. West, Suite 314
Billings, MT 59102
Tel    (406) 245-6643
Fax    (406) 245-6693
E-mail:  bill@daltonlawpc.com
**Counsel for Plaintiffs**

## ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the March 20, 2020, I electronically transmitted the attached documents to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all parties of record.

*/s/ Sean Cooper*